IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| DEAN HANSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:10-0906** |
| | ) | |
| FIRST NATIONAL BANK, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff has filed a Motion to Compel Redacted Information – testimony in the depositions of nine people taken in the course of litigation in the Circuit Court of Greenbrier County, West Virginia – and exhibits attached to the depositions. (Document No. 48.) Defendant Henthorn has filed a Response (Document No. 52.), and Plaintiff has filed a Reply (Document No. 53.). The undersigned required Mr. Henthorn to submit an unredacted copy of the deposition transcripts and exhibits to the undersigned for consideration *in camera*. (Document No. 123.) Mr. Henthorn has done so. Having read the unredacted copies of the deposition transcripts, the undersigned has determined that the redacted testimony is not related, and therefore is not relevant, to any claim or defense of a party. Plaintiff's Motion to Compel Redacted Information will therefore be denied with respect to the redacted testimony. Having examined the exhibits, the undersigned has determined that they are relevant to Plaintiff's claim that Defendants violated 18 U.S.C. § 1962(a), (c) and (d) of the Racketeer Influenced and Corrupt Organizations [RICO] Act and therefore Plaintiff's Motion to Compel their production will be granted.[1]

---

[1] Mr. Henthorn submitted the depositions of eleven people though only nine are listed in his list of Transcript Redactions. The depositions include 58 exhibits of which exhibits 14, 28, 29, 31,

## BACKGROUND

Plaintiff filed his Complaint (Document No. 1.) on July 15, 2010, suing individually and doing business as Hanson Cattle Farm and Shellbark Farms and naming First National Bank [FNB], Mr. Thomas Garten, formerly a member of FNB's Board of Directors, and Mr. Charles Henthorn, formerly the FNB's President and/or Chief Operating Officer, as Defendants. Plaintiff also identified as a "related person" Mr. Kevin O'Brien, alleging that Mr. O'Brien represented that he was as a cattle broker to Plaintiff and others and engaged in business in Greenbrier County, West Virginia, in 2005 and 2006 individually and as Shamrock Farms and K&M Properties and Investments.(Document No. 1, ¶ 5.) Plaintiff alleges that beginning in early 2005, Defendants and Mr. O'Brien "conspired to devise a 'ponzi'-like Scheme to defraud and obtain money by means of false and fraudulent pretenses, representations, and promises about material matters . . . through the enterprise of Kevin O'Brien d/b/a Shamrock Farms and/or K&M Properties and Investments . . .." (Id., ¶ 7.) Plaintiff claims that Mr. O'Brien prepared false financial statements respecting his businesses and, with Defendants' facilitation and assistance, used them to induce Plaintiff and others to engage in transactions involving cattle with Mr. O'Brien's businesses, the proceeds of which were utilized in furtherance of the scheme. (Id., ¶¶ 9 - 14 and 82 - 84.) Mr. O'Brien, Mr. Henthorn and Mr. Garten were prosecuted for their involvement in the scheme. (Id., ¶¶ 85 - 86.)[2] Plaintiff claims

_____

37 and 46 contain redactions. Mr. Henthorn submitted an unredacted copy of exhibit 46 which is a copy of a letter written anonymously to a United States Probation Officer. The undersigned will require Mr. Henthorn to produce a redacted copy of exhibits 46 as it is consistent with the undersigned's ruling respecting the redacted testimony. The undersigned has not considered the redactions contained in the other exhibits as Mr. Henthron did not provide an unredacted copy of them.

   [2] In *United States v. O'Brien*, Criminal No. 5:08-0024, Mr. O'Brien pled guilty to an Information charging him with the violation of 18 U.S.C. § 1341 and was sentenced to a 51 month

that "[w]hen the Scheme was about to collapse, the Bank improperly seized or transferred funds from [Mr. O'Brien's business] accounts . . . to ensure that its financial position was not compromised." (Id., ¶ 90.). Plaintiff alleges Defendants' violations of 18 U.S.C. § 1962(a), (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act[3], negligence, conversion, conspiracy to commit fraud, unjust enrichment, the personal liability of Mr. Henthorn and Mr. Garten and Defendants' willful, wanton and reckless disregard of the rights of others.

Defendants answered Plaintiff's Complaint and filed Cross Claims against each other stating numerous defenses to the allegations contained in Plaintiff's Complaint and their Cross Claims including Rules 8(c) and 12(b) defenses and defenses ordinarily asserted in response to the various claims. (Document Nos. 14 (FNB's Defenses and Answer to Plaintiff's Complaint and Cross Claims Against Mr. Garten and Mr. Henthorn), 16 (Mr. Garten's Answer to Plaintiff's Complaint and Cross Claims), 17 (Mr. Henthorn's Answer to Plaintiff's Complaint), 18 (FNB's Defenses and Answer to Mr. Garten's Cross Claims), 19 (Mr. Henthorn's Answer to FNB's Cross Claims and Cross Claim against FNB and Mr. Garton), 21 (FNB's Defenses and Answer to Mr. Henthorn's Cross Claim),

---

term of imprisonment and a five year term of supervised release. Additionally, the District Court imposed a $3,343,298.01 fine and a $100 special assessment. Mr. Garten and Mr. Henthorn pled guilty to Informations in *United States v. Garten*, Criminal No. 5:08-0025, and *United States v. Henthorn*, Criminal No. 5:08-0026, charging them with violations of 18 U.S.C. § 215(a)(2). The District Court sentenced Mr. Garten to a five month term of imprisonment and a three year term of supervised release and imposed a $50,000 fine and a $100 special assessment and sentenced Mr. Henthorn to a seven month term of imprisonment and a three year term of supervised release and imposed a $75,000 fine and a $100 special assessment.

    [3] To state a claim for a violation of RICO, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. To sufficiently allege a pattern of racketeering activity, a plaintiff must indicate two or more racketeering predicates listed in 18 U.S.C. § 1961 which are (1) related and amount to or pose a threat of continuous criminal activity. *H.J., Inc., v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

22 (Mr. Garten's Answer to Mr. Henthorn's Cross Claim) and 23 (Mr. Garten's Answer to FNB's Cross Claim.).)

On January 10, 2011, Plaintiff filed a Motion for Entry of Protective Order including a Proposed Protective Order as the parties had agreed upon it. (Document No. 43.) The Court entered and filed the Protective Order on April 29, 2011. (Document No. 71.) The Protective Order provides for the designation of certain documents as confidential and the process for disclosing them and maintaining their confidentiality. The Protective Order further specifies that Mr. Henthorn may redact testimony and information contained in certain deposition transcripts and Plaintiff may challenge Mr. Henthorn's redactions as follows:

> With regard to deposition transcripts taken in prior, but related litigation, counsel for defendant Henthorn, in lieu of or in addition to marking the transcripts 'CONFIDENTIAL,' redact objectionable material and information from the transcripts and attached exhibits, and provide redacted copies to all counsel along with a redaction log to counsel for plaintiff. Counsel for plaintiff shall not disseminate any copies of the referenced deposition transcripts for use beyond the case at bar. Plaintiff may challenge the propriety of any redactions in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Court.

In his Motion to Compel Redacted Information (Document No. 48.), Plaintiff states that in response to his request that Mr. Henthorn produce copies of transcripts of depositions taken in State Court matters arising out of the circumstances alleged in his Complaint, Mr. Henthorn provided transcripts of the depositions of nine persons in Nessler v. Garten, et al., Civil Action No. 08-C-22, in the Circuit Court of Greenbrier County, West Virginia, containing redactions and a Redaction Log stating that "[t]he parties have previously agreed upon a protective order allowing counsel to redact such transcripts."[4] Plaintiff claims that he has the right to challenge Mr. Henthorn's redactions of

_____

[4] The undersigned notes that Plaintiff alleges circumstances respecting Mr. Frederic Nessler, the Plaintiff in the Greenbrier Circuit Court proceeding, as "predicate acts of racketeering" in his

the transcripts under the agreed upon Protective Order. Plaintiff states that the scope of discovery allowed under the Federal Rules of Civil Procedure is "very broad" and recognizes that "Courts may protect a party from embarrassment from certain discovery materials through entry of a protective order, but the party seeking to restrict discovery bears the burden of demonstrating serious embarrassment from the discovery." Plaintiff asserts that though Mr. Henthorn indicates that the redacted portions of the transcripts pertain to embarrassing personal matters irrelevant to this matter, he does not indicate that they are protected under any privilege. Plaintiff further claims that (1) to the extent that the testimony contained in the redacted portions of the transcripts was about rumors about Mr. Henthorn at First National Bank and in the community, it cannot be regarded confidential because the rumors were circulating publicly; (2) to the extent that testimony concerns matters embarrassing to Mr. Henthorn, the Protective Order covers it; (3) it will not be a burden to Mr. Henthorn to produce the unredacted transcripts; and (4) Plaintiff should have the unredacted transcripts because they contain statements of witnesses under oath respecting conduct of the individual Defendants in this matter. Additionally, Plaintiff indicates that Mr. Henthorn has not produced exhibits to the transcripts and requests that the Court require him to do so. Plaintiff attached a copy of the Redaction Log explaining the redactions as falling under one or more of four categories[5]; a list of Transcript Redactions identifying the depositions of nine persons[6], specifying

_____

Complaint. (Document No. 1, ¶¶ 23 - 28.)

[5] The categories specify redacted information as follows: (1) inquiries seeking speculation respecting Mr. Henthorn's rumored personal habits, activities or conduct to which the witness responded that he or she lacked personal knowledge; (2) same as (1) except that "the witness speculated or guessed as to the answer . . . without any personal knowledge or foundation for doing so"; (3) inquiries respecting a June 1, 2008, anonymous letter relating rumors respecting Mr. Henthorn's personal life which was sent to a United States Probation Officer and was "the ostensible 'foundation' for asking the personal questions referenced" in categories (1) and (2); and (4) inquiries

the page and line numbers of the redactions and the applicable redaction category as stated in the Redaction Log; letters between counsel; and Plaintiff's First Set of Discovery Requests as exhibits to his Motion. Plaintiff also submitted copies of excerpts of the deposition transcripts showing the redactions under cover of the Motion to Seal Deposition Excerpts. (Document No. 49.)

In his Response to Plaintiff's Motion to Compel Redacted Information (Document No. 52.), Mr. Henthorn explains that the depositions were taken in the above referenced matter in the Circuit Court of Greenbrier County which settled. The transcripts were therefore not made a part of the record in that case. The transcripts were subpoenaed in another matter in Greenbrier County. Mr. Henthorn objected because the transcripts contained embarrassing and scandalous testimony. Circuit Judge Pomponio nevertheless authorized the production of the transcripts but permitted Mr. Henthorn to redact them and make out a redaction log so that they would be produced as he redacted them along with the log. Judge Pomponio otherwise restricted access to and disclosure of them. Mr. Henthorn argues that production of the transcripts without their redaction in this matter would run contrary to Judge Pomponio's rulings in the Greenbrier County Circuit Court matter. Mr. Henthorn further contends that redaction and restricted access to and disclosure of the documents is appropriate because the redacted information is personal, embarrassing and irrelevant to these proceedings and if disclosed would very likely be published on an internet website which has focused on the matters underlying this action. Additionally, Mr. Henthorn complains that Plaintiff

---

seeking speculation respecting Mr. Henthorn's rumored "role in bringing foreign and undocumented workers to Greenbrier County" to which the witness responded that he or she lacked personal knowledge.

[6] Mr. Douglas Fisk, Ms. Catherine Gilbert; Mr. James King; Ms. Kathy King; Ms. Debbie McClung; Mr. Kevin O'Brien; Ms. Vickie Quick; Mr. Benny Williams; and Ms. Debbie Boone.

has made the transcripts a part of the record in this case notwithstanding restrictions which have been imposed upon their disclosure and urges that it is not enough that the redacted transcripts be subject to the agreed upon Protective Order in this case. He asserts that they should be maintained under seal because they contain confidential information about First National Bank's banking practices and private financial information about several of its customers. Mr. Henthorn states, however, that he "has no objection to an *in camera* disclosure of the redacted material to this Court for a determination whether the questions and answers appearing in the transcripts should be un-redacted and if so how this information should be treated by counsel following disclosure. * * * Henthorn does not object to the disclosure of any relevant information to the issues in this case, and any legitimate discovery about his conduct. However, unsubstantiated, gutter rumors have no place in civil discovery, when the only purpose of the inquiry is prurient."

In his Reply (Document No. 53.), Plaintiff asserts that (1) the restrictions imposed in the Greenbrier County Circuit Court do not apply in this matter; (2) the proposed Protective Order allows him to challenge Mr. Henthorn's redactions; (3) the transcripts which Mr. Henthorn filed under seal do not indicate circumstances which might be confidential or scandalous; and (4) Mr. Henthorn has not explained how access to and disclosure of the redacted testimony should be restricted any more than provided in the Protective Order.

By Order filed on October 12, 2011, the undersigned determined that under the Protective Order "[t]he parties basically agreed that any challenge respecting the redactions should be raised with the Court" and required Mr. Henthorn to submit unredacted copies of the deposition transcripts and exhibits to the undersigned for their consideration *in camera* under the two-level relevancy standard set forth in Federal Rule of Civil Procedure 26(b)(1) and the Advisory Committee Notes.

See Marfork Coal Company, Inc. v. Smith, 274 F.R.D. 193, 203 - 204 (S.D.W.Va. 2011). (Document No. 123.) Mr. Henthorn has submitted a copy of the depositions of (1) Ms. Paula Wykle including 33 exhibits; (2) Ms. Donna Norman indicating one exhibit but having no exhibit attached; (3) Mr. Douglas Fisk having 3 exhibits; (4) Ms. Kathy King having three exhibits; (5) Mr. Kevin O'Brien having 10 exhibits; (6) Mr. James King having no exhibits; (7) Mr. Benny Williams having 4 exhibits; (8) Ms. Debbie Boone having no exhibits; (9) Ms. Debbie McClung having no exhibits; (10) Ms. Vickie Quick having no exhibits; and (11) Ms. Catherine Gilbert having 4 exhibits.[7]

## DISCUSSION

The undersigned applies the standard set forth in Federal Rule of Civil Procedure 26(b)(1) in considering whether Mr. Henthorn should be required to submit unredacted copies of the deposition transcripts and exhibits. The threshold consideration in resolving any dispute respecting information which a party is seeking in discovery is whether the information is within the scope of discovery as contemplated by Federal Rule of Civil Procedure 26(b)(1). That Rule provides as follows respecting the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

---

[7] The depositions of Ms. Wykle and Ms. Norman are not identified in the list of Transcript Redactions which is attached as an Exhibit to Plaintiff's Motion to Compel Redacted Information (Document No. 48.) as no redactions are indicated in their testimony. There are redactions in exhibits 14, 28, 29 and 31 attached to Ms. Wykle's deposition.

Relevant matters are ones which relate to a party's claim or defense and include information about persons who know of such relevant matters. Relevancy does not extend more broadly to the subject matter of the action unless the Court orders it upon a finding of good cause. Discovery may therefore not be had of information about persons who know of the subject matter involved in the action but not of matters which relate to any party's claim or defense. Upon this framework, relevancy is conceptually broad. Information is relevant if there is any possibility that it might relate to a claim or defense of any party. When requested information appears relevant, the party objecting to providing it must demonstrate that the information has no bearing upon a claim or defense of any party or circumstances contemplated by Rule 26(b)(2)(C) exist. See Desrosiers v. Mag Industrial Automation Systems, LLC, 675 F.Supp.2d 598, 601 (D.Md. 2009). Rule 26(b)(2)(C) provides that the Court is required to impose limitations upon the frequency or extent of discovery within the scope of Rule 26(b)(1) as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance if the discovery in resolving the issues.

"District Courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." Hinkle v. City of Clarksburg, West Virginia, 81 F.3d 416, 426 (4th Cir. 1996).

    Having examined the redacted testimony, the undersigned finds that it is not relevant to any

9

party's claim or defense in this matter. The source and focus of the questioning of the deponents was the June 1, 2008, anonymous letter to a United States Probation Officer containing unsubstantiated statements respecting Mr. Henthorn's conduct and dealings at FNB and in the community as described in the Redaction Log. All of the deponents denied personal knowledge respecting the anonymous letter. Several of the deponents denied personal knowledge respecting the rumors contained in the letter (Ms. Gilbert, Mr. King, Ms. McClung, Ms. Quick, Mr. Williams and Ms. Boone) though several indicated that they had heard of the letter and the rumors contained in it (Mr. Fisk, Mr. King, Ms. Quick and Mr. Williams). Ms. King denied personal knowledge of other dishonest acts of Mr. Henthorn or Mr. Garten and acknowledged that the signer of a check was Mr. O'Brien's girlfriend. Plaintiff's Motion to Compel the production of the redacted deposition testimony will therefore be denied.

Respecting the 58 exhibits attached to the eleven deposition transcripts including the transcript of Ms. Wykle which includes 33 of them, the undersigned finds that they are relevant to this matter as the depositions were taken in Mr. Nessler's 2008 lawsuit against Defendants in the Circuit Court of Greenbrier County apparently deriving from the same circumstances which are the subject of this matter and circumstances respecting Mr. Nessler are alleged in Plaintiff's Complaint as predicate acts of racketeering. Accordingly, Plaintiff's Motion to Compel the production of the exhibits will be granted.

It is therefore hereby **ORDERED** that Plaintiff's Motion to Compel Redacted Information (Document No. 48.) is **GRANTED** with respect to the exhibits. Within ten day of the entry of this Memorandum Opinion and Order, Mr. Henthorn shall provide redacted copies of the 58 exhibits attached to the copies of the deposition transcripts submitted to the undersigned for *in camera*

consideration. Plaintiff may challenge the redaction of the exhibits except exhibit 46 which the undersigned has found is appropriate. Plaintiff's Motion is **DENIED** with respect to the deposition testimony.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: November 18, 2011.

R. Clarke VanDervort
United States Magistrate Judge

11