IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| DEAN HANSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:10-0906 |
| | ) | |
| FIRST NATIONAL BANK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff filed a Motion to Compel Facts Revealed During Investigation on August 25, 2011. (Document No. 113.) Plaintiff requests that the Court order Defendant First National Bank [FNB] to disclose facts which Mr. Philip Smith, a Tennessee attorney who represented FNB, reported to Mr. Ronald Snyder, Chairman of FNB's Board of Directors, and caused Mr. Snyder to request Defendant Garten's resignation as a member of FNB's Board of Directors. Plaintiff recites deposition testimony of Mr. Snyder in which Plaintiff's attorney, Mr. Jernigan, asked Mr. Snyder whether Mr. Smith provided information which caused him to be concerned about Mr. Garten and FNB's attorney, Mr. Ewing, objected indicating that the question inquired into attorney/client privileged communications. Mr. Snyder then testified, "I will say that I had a conversation with Mr. Smith that led me to ask for [Mr. Garten]'s resignation." Relying primarily upon Upjohn Company v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), Plaintiff claims that the attorney-client privilege does not apply to facts which Mr. Smith learned from an independent source. Plaintiff asserts that he "only seeks discovery of certain facts conveyed by Mr. Smith to Mr. Snyder upon which Mr. Snyder acted in seeking the resignation of Mr. Garten from FNB's board. [He] does not seek discovery of any legal advice given by Mr. Smith to Mr. Snyder – just the facts.

When Mr. Smith conveyed these facts to Mr. Snyder, which were obviously obtained from a source other than FNB, Mr. Smith was acting as a mere conduit of information, and as such that communication is not protected by the attorney-client privilege."

FNB filed a Response in Opposition on September 15, 2011. (Document No. 118.) FNB contends that though in testifying at his deposition Mr. Snyder did not disclose specifically the source of the facts which Mr. Smith related to him, he insinuated that Mr. Smith learned the facts in conversations with Mr. Henthorn, formerly FNB's President and CEO, and/or Mr. Garten. In support of this contention, FNB submits the Affidavit of Mr. Snyder stating that Mr. Smith had a conversation with Mr. Henthorn at a retreat about two weeks before Mr. Henthorn resigned as FNB's President and CEO and "[d]uring my conversations with Attorney Smith following Mr. Henthorn's resignation, Attorney Smith conveyed to me information that Mr. Henthorn had expressed during their attorney-client communications during the retreat while Mr. Henthron was still President and CEO of First National Bank." FNB contends therefore that "[t]he Plaintiff's argument against attorney-client privilege . . . is premised on an unsubstantiated assumption that the source of the information was an independent source. Here, Attorney Smith was not a 'mere conduit' of information obtained from independent sources. Disclosure of the information at issue in the Plaintiff's Motion to Compel would directly reveal the substance of confidential, attorney-client communications between Attorney Smith and FNB, acting through its senior representatives. Therefore, the communications at issue in the Plaintiff's Motion to Compel are protected from disclosure by the attorney-client privilege."

Plaintiff filed a Reply Brief in Support of his Motion on September 26, 2011. (Document No. 122.) Again primarily relying upon Upjohn Company v. United States, Plaintiff urges that

"[r]egardless of its source, the information [he] seeks is not privileged. * * * A client may not cloak bare facts with the protection of the privilege simply by conveying those facts to an attorney."

A corporation's officers and directors acting in their corporate and fiduciary capacities and consulting with the corporation's attorney(s) administer the corporation's attorney-client privilege. See Upjohn Company v. United States, 449 U.S. at 392, 101 S.Ct. at 684; CFTC v. Weintraub, 471 U.S. 343, 348,105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985)("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."). The privilege extends beyond communications between corporate officers and directors and the corporation's attorney(s) to communications between the corporation's attorney(s) and employees for the purpose of obtaining information "to enable [the attorney] to give sound and informed advice." Upjohn Company v. United States, 449 U.S. at 390, 101 S.Ct. at 683. "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" Upjohn Company v. United States, 449 U.S. at 395 - 396, 101 S.Ct. at 685 - 686. Thus, when Chairman Snyder, having attorney Smith's input respecting whether or not to call for Mr. Garten's resignation as a Director, was asked "What factual information did your attorney Mr. Smith communicate to you relevant to Mr. Garten's resignation?", the communication was covered by the attorney-client privilege. Mr. Snyder appropriately relied upon the privilege and refused to answer the question. Plaintiff is not prevented from learning the facts which Mr. Smith reported to Mr. Snyder respecting Mr. Garten from other witnesses and documents in this case by application of the attorney-client privilege to the communication between Mr. Snyder and Mr. Smith. As the Upjohn Company Court stated, "Application of the attorney-client privilege to communications such as those involved here . . . puts

the adversary in no worse position than if the communications had never taken place." Upjohn Company v. United States, 449 U.S. at 395, 101 S.Ct. at 685. For these reasons, Plaintiff's Motion to Compel Facts Revealed During Investigation by further inquiry of Mr. Snyder respecting information communicated to him by Mr. Smith will be denied.

It is therefore hereby **ORDERED** that Plaintiff's Motion to Compel Facts Revealed During Investigation (Document No. 113.) is **DENIED**.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: December 19, 2011.

R. Clarke VanDervort
United States Magistrate Judge